IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND SHELTON, : | |
|         Plaintiff, : | |
| : | |
| v. : | Civil No. 2:20-cv-04178-JMG |
| : | |
| CITY OF PHILADELPHIA, *et al.*, : | |
|         Defendants. : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                August 30, 2021

    Plaintiff Raymond Shelton, proceeding *pro se*, is currently detained awaiting trial in state court. He has initiated the present action pursuant to 42 U.S.C. § 1983 alleging constitutional violations related to his pretrial detainment by the City of Philadelphia, District Attorney Larry Krasner, Public Defender Kier Bradford Grey, and the Commissioner of the Philadelphia Department of Prisoners, Blanche Carney.[1] ECF No. 1, at 1. Defendants Krasner, Carney, and the City of Philadelphia have moved to dismiss the complaint for failure to state a claim. ECF Nos. 12, 18. For the reasons set forth below, the Court will grant the motions.

I.     **FACTUAL BACKGROUND**[2]

    On April 9, 2019, Shelton was charged with attempted murder, aggravated assault, and related charges. ECF No. 1, at ¶ 9; *see also* Docket No. CP-51-CR-0004790-2019. His bail was set at $350,000, and he has remained detained pending trial. *See* ECF No. 1, at ¶ 9. During his

---

[1] Throughout this memorandum, the Court has construed Shelton's *pro se* complaint liberally. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Higgs v. Att'y Gen.*, 665 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

[2] The following summary is based on the factual allegations contained in the complaint. For purposes of deciding this motion, the allegations are presumed to be true and are considered in the light most favorable to the plaintiff.

detention, the covid-19 pandemic began.[3] *See id.* ¶¶ 10–13. As a response, in April 2020, the defendants announced "criteria" they would consider for the emergency release of those in the custody of the Philadelphia Department of Prisons. *Id.* ¶ 14. The criteria for the emergency release included inmates and pretrial detainees held for economic crimes and whose minimum sentence had been served or whose bail was less than $25,000. *Id.* at ¶ 15. Shelton alleges that the criteria evince the systemic racism in society. *See id.* In addition, Shelton claims that while detained, he has been given substandard medical treatment, provided with inadequate food, and paid insufficient wages. *See id.* ¶ 25. He also alleges that there are no religious diets available, that pretrial detainees' religious ceremonies are "routinely curtailed," and that the cost of commissary items is excessive. *Id.* ¶¶ 25–26.[4]

As such, Shelton asserts that the following constitutional rights have been violated: (1) right to free exercise of his sincerely held religious beliefs; (2) right to equal protection based on race and religion; (3) right not to be housed in conditions that pose substantial risk of harm; and (4) right to a speedy trial. *Id.* at 36–40. Shelton seeks compensatory damages in the amount of $350,000, injunctive relief, and punitive damages. *Id.* ¶¶ 42–44.

## II.    STANDARD OF REVIEW

A complaint may be dismissed for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must contain

---

[3] Plaintiff has certain conditions, including chronic asthma, kidney disorder and symptoms of hyperextension, that make him more vulnerable to the disease. *See id.* ¶ 8.

[4] Throughout Shelton's complaint, he references the effect many of these conditions have on other inmates and detainees beyond himself. *See, e.g.*, ECF No. 1, at ¶¶ 25, 26, 32. Although Shelton may represent himself *pro se* in this action, he is not permitted to represent others in federal court. *See, e.g., Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998 ("The rule that a non-lawyer may represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Jordan-Bey v. Carney*, No. 20-3608, 2021 WL 3662374, at *1 n.3 (E.D. Pa. Aug. 18, 2021) (construing *pro se* plaintiff's "references to other inmates as background information concerning his own claims").

factual allegations that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Facial plausibility means that when accepting the complaint's factual allegations as true and in the light most favorable to the plaintiff, a "reasonable inference" may be drawn that "the defendant is liable for the misconduct alleged." *See id.*

At the motion to dismiss stage, the issue is not whether the plaintiff will prevail in the end but whether the complaint rises to the level that is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). The Third Circuit has set forth a three-step framework for determining the sufficiency of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court should take "note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79). Second, the court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79); *see also Iqbal* 556 U.S. at 678 (explaining that courts need not accept as true legal conclusions or conclusory statements unsupported by the facts). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 678–79).[5] A court must "draw on its judicial experience and common sense" to make this context-specific determination. *Iqbal*, 556 U.S. at 686.

### III.   DISCUSSION

Shelton cites to 42 U.S.C. § 1983 as the basis for his claims against the City of Philadelphia and the individual defendants—Krasner, Carney, and Grey. *See* ECF No. 1. To

---

[4] When deciding a motion to dismiss, courts generally can only consider the allegations contained in the complaint, any attached exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

successfully assert a § 1983 claim, a plaintiff must show "a deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008). The claims against each defendant will be addressed in turn below.[6]

### A. Defendant City of Philadelphia

Shelton appears to bring various claims against the City of Philadelphia for violating his constitutional rights. *See* ECF No. 1. A municipality, such as Philadelphia, may be held liable for a constitutional violation if the plaintiff is able to establish a causal connection between the violation and the municipality's policy or custom. *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). There are two ways for such claims to proceed. *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). The first way is when plaintiffs point to "an unconstitutional policy or custom of the municipality" that led to their injuries. *Id.* The other way is when the plaintiffs' injuries were "caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'"[7] *Id.* (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)).

If plaintiffs allege an unconstitutional "policy," then they must identify "an official proclamation, policy, or edict by a decisionmaker possessing final authority." *Id.* An

---

[6] The plaintiff has not responded to either motion to dismiss, despite being afforded ample opportunity. *See* ECF No. 20 (order directing the plaintiff to respond to the motions to dismiss and extending the deadline to respond, which has since passed). Where, such as here, a timely response has not been filed, the local rules permit most motions to be granted as uncontested. Local R. 7.1(c). However, the Third Circuit forbids unopposed motions to dismiss to be granted "solely on the basis of the local rule without any analysis of whether the complaint failed to state a claim upon which relief can be granted as provided in Fed. R. Civ. P. 12(b)(6)." *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir.1991). The rationale is that "such a dismissal is not really a dismissal for failure to state a claim but is instead a sanction," but to dismiss a complaint as a sanction, the district court must first analyze the factors listed in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). *Wiggins v. MacManiman*, 698 F. App'x 42, 43 (3d Cir. 2017). Therefore, even though the plaintiff has not responded, the Court will address the merits of the pending motions to dismiss.

[7] "We consider allegations of failure to train, supervise, and discipline together because they fall under the same species of municipal liability." *Estate of Roman v. City of Newark*, 914 F.3d 789, 799 n.7 (3d Cir. 2019).

unconstitutional "custom" may be shown where there is a "given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* In comparison, for a "failure or inadequacy" claim, plaintiffs must demonstrate that the "failure or inadequacy amount[ed] to deliberate indifference on the part of the municipality." *Id.*

Reading his complaint liberally, Shelton appears to initially allege a violation of his constitutional right to the free exercise of religion. ECF No. 1, at ¶ 36. A "threshold" requirement for asserting a free exercise claim is that the plaintiff's alleged beliefs are "both sincerely held and religious in nature." *See, e.g., DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003). The only factual allegations relevant to this claim are Shelton's assertions that (1) there are no "religious diets for those of the Islamic, Judaie [sic], or other faiths requiring such and or to consider," and (2) "[p]retrial detainees['] religious ceremonies specifically those of the Islamic faith are routinely curtailed." ECF No. 1, at ¶ 25. He does not allege that he requires a specific diet or must conduct certain ceremonies due to "a sincerely held belief" that is "religious in nature." Indeed, he only states, in a conclusory fashion, that such diets are unavailable and religious ceremonies have been curtailed. As such, he has not plausibly stated a violation of his constitutional right to free exercise of religion. Although this claim must be dismissed for that reason, Shelton will be afforded the opportunity to cure the deficiencies described above.

Next, Shelton alleges that his constitutional right to equal protection based on race has been violated. ECF No. 1, at ¶ 37. "In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005); *see also Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir.

2009). Purposeful discrimination may be demonstrated when: "(1) a law or policy explicitly classifies citizens on the basis of race; (2) a facially neutral law or policy is applied differently on the basis of race; or (3) a facially neutral law or policy that is applied evenhandedly is motivated by discriminatory intent and has a racially discriminatory impact." *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (citations omitted).

The basis of Shelton's equal protection claim seems to be the implementation of the policy that was developed to determine which pretrial detainees would be recommended for emergency release at the beginning of the pandemic. *See* ECF No. 1, at ¶¶ 15, 37. The relevant allegation states:

> This criteria called for the release of inmates and pretrial detainees that are being held for economic crimes, whose minimum sentence has been served and whose bail was less than $25,000.00. [T]his criteria in itself bemoans the systemic racism society is presently sickened by[. T]his criteria historically involves less than 5% of the African Americans incarcerated but who make up over 60% of the inmate population. Further, this criteria directly excludes Pretrial Detainees and inmates held for sex, gun, drugs and violent offenses (they've allegedly committed) which in and of itself illustrates the Systemic Racism that has ignited social unrest the world over for at the root of, some of these charges we find lack of treatment, disenfranchisement and poverty of which a staggering 78% of those arrested and prosecuted are African Americans.

*Id.* at ¶ 15. Such allegations do not sufficiently allege purposeful discrimination. The policy, as described by Shelton, does not explicitly classify citizens based on race. Nor does Shelton allege that the policy was applied differently based on race, or that the policy was motivated by discriminatory intent. Therefore, Shelton's equal protection claim will be dismissed without prejudice.[8]

---

[8] In his motion to dismiss, Defendant Krasner addressed a possible excessive bail claim raised in the complaint. Though it does not appear that Shelton was raising such a claim, the Court agrees that the allegations in the complaint are insufficient to state a plausible claim for relief: he has not explained why he believes his bail was excessive, nor has he alleged that a municipal policy or custom caused his bail to be excessive.

Finally, Shelton claims that his continued detainment poses a substantial risk of serious harm, due to his underlying medical conditions, and therefore violates his constitutional rights. ECF No. 1, at ¶¶ 38, 39. Construing Shelton's complaint liberally, there are two theories he may be pursuing to allege a substantive due process violation: (1) that the conditions of confinement rise to the level of punishment, or (2) the defendants were deliberately indifferent to his serious medical needs. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). The first theory is predicated on the Supreme Court's holding that pretrial "detainees may not be punished before they are adjudicated guilty." *Id.* (discussing *Bell v. Wolfish*, 441 U.S. 520, 549 (1979)). "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose." *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 231 (3d Cir. 2008)). The second theory requires plaintiffs to show that the defendants "knew of *and disregarded* an excessive risk to their health and safety." *Id.* at 329 (emphasis in original).

Shelton has failed to plausibly allege a constitutional violation under either theory. Aside from conclusory statements that continued detainment amounted to punishment, *see, e.g.*, ECF No. 1, at ¶ 22, Shelton has not shown that the conditions of confinement rise to the level of unconstitutional punishment as a pretrial detainee. The threat of infection, alone without more, is insufficient to state a claim. Nor has he sufficiently alleged deliberate indifference. He has only alleged that he has certain underlying conditions and that the defendants have "knowingly disregarded" the serious risks of infection by continuing to detain him. *See id.* at ¶ 39. Such conclusory statements do not plausibly state a claim for relief. Notably, the Third Circuit has recognized that a failure to eliminate all risk from covid-19 does not establish deliberate indifference to detainees' serious medical needs. *Hope*, 972 F.3d at 330 (assessing a deliberate

7

indifference claim due to conditions of confinement during the pandemic in the preliminary injunction context). Therefore, this claim will be dismissed without prejudice.[9]

Shelton's complaint also included general allegations about substandard medical care, inadequate food, high cost of commissary items and phone calls, and insufficient wages. *See* ECF No. 1, at ¶¶ 25–26. To the extent he was attempting to raise separate constitutional violations based on these allegations, he again has not plausibly stated a claim for relief. His allegations are conclusory, lacking any mention of whether he personally has suffered harm, and therefore will be dismissed without prejudice. *See Jordan-Bey v. Carney*, No. 20-3608, 2021 WL 3662374, at *4 (E.D. Pa. Aug. 18, 2021) (dismissing claims based on similar allegations because the allegations were "too vague," and plaintiff failed to allege that "he suffered actual harm from any of these things").[10]

---

[9] To the extent Shelton requests equitable relief on this claim, the request is also denied. Shelton is currently a member of the proposed class in the *Remick v. City of Phila.*, No. 20-1959 (E.D. Pa.), class action that is seeking injunctive relief for the allegedly unconstitutional conditions during the covid-19 pandemic for those in the custody of the Philadelphia Department of Prisons. *See, e.g.*, *Young v. Kelly*, No. 88-511, 1993 WL 7539, at *1 (S.D.N.Y. Jan. 14,1993) ("Courts have barred individual suits for injunctive and equitable relief from allegedly unconstitutional prison conditions where there is an existing class action."); *Milbourne v. Cumberland Cnty.*, No. 20-8264, 2020 WL 7351215, at *2 (D. N.J. Dec. 14, 2020) (denying preliminary injunction because the plaintiff was a member of a proposed class in pending class action that was seeking injunctive relief and focused on the prison's "actions and inactions during the Covid-19 pandemic"). Therefore, he cannot proceed with the same claim for equitable relief here.

[10] None of the defendants have addressed Shelton's speedy trial claim. *See* ECF No. 1, at ¶ 40. This is understandable, as it is entirely unclear against which defendant the claim is being brought. And to the extent the defendant seeks immediate release on this claim, he must proceed through a habeas petition, not a § 1983 action, after exhausting his state court remedies. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 323 (3d Cir. 2020) ("Where a petitioner seeks release from detention, habeas (not a § 1983 action seeking release) is proper.").

Moreover, the complaint is completely lacking in factual detail to plausibly allege a Sixth Amendment speedy trial violation. To determine whether there has been a constitutional speedy trial violation, courts must consider "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant." *Talbert v. Evers*, No. 21-2505, 2021 WL 3033772, at *6 (E.D. Pa. July 19, 2021) (Kearney, J.) (quoting *United States v. Briggs*, No. 20-410, 2020 WL 3077171, at *3 (E.D. Pa. June 10, 2021); *see also Barker v. Wingo*, 407 U.S. 514, 530 (1972)*.* Shelton merely alleges that he was arrested in April 2019, and that at some unknown time, the president judge of the Philadelphia courts "suspended [the] Speedy Trial Act." *See* ECF No. 1, at ¶¶ 9, 34. He has alleged no facts as to the reason for any trial delay, his assertions of his right to a speedy trial, or the prejudice he has suffered. It should be noted that the publicly available docket sheet for his underlying state criminal case suggests that some of the delay was related to multiple defense-requested continuances and a recent joint request for a continuance. *See* Docket No. CP-51-CR-0004790-2019. As such, this claim will be

8

### B. Defendant Larry Krasner

Moving on to the individual defendants, Shelton indicates that he is suing District Attorney Larry Krasner in both his official and individual capacities. *See* ECF No. 1, at ¶ 6. Neither claim can survive. First, "[a] claim against a city official in [their] official capacity is no different than a claim against the municipality." *Whitfield v. City of Phila.*, 587 F. Supp. 2d 657, 665 n.13 (E.D. Pa. 2008) (citing to *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 435 (E.D. Pa. 2020) (finding the official capacity claims against the defendant district attorney to actually be against the defendant municipality).[11] Therefore, the official capacity claims against Krasner are duplicative of the claims against the City of Philadelphia and will be dismissed. *See Yoast*, 437 F. Supp. 3d at 419 n.15 (dismissing official capacity claim as duplicative of municipal liability claim).

Second, the individual capacity claim against Krasner is barred by absolute prosecutorial immunity. In § 1983 actions, "a prosecutor enjoys absolute immunity for actions performed in a judicial or 'quasi-judicial capacity." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). That does not mean that a prosecutor's every action is protected "merely because she is a prosecutor" *Weimer v. Cnty. of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020). "Rather, absolute immunity 'attaches [only] to actions intimately associated with the judicial phases of litigation, . . . not to

---

dismissed. *Cf. Talbert*, 2020 WL 3077171, at *3 (dismissing § 1983 speedy trial claim because plaintiff failed to plead sufficient facts about his detainment or length or reasons for delay).

[11] *See also Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017) (explaining that "lawsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent'" (quoting *Kentucky*, 473 U.S. at 166)); *Reitz v. Cnty. of Bucks*, 125 F.3d 129, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability . . . ."). *But see Sourovelis v. City of Phila.*, 103 F. Supp. 3d 694, 710 (E.D. Pa. 2015) (finding the Philadelphia District Attorney's Office to be an "entity" for purposes of § 1983 liability and declining to follow *Reitz* because in that case, the Third Circuit had found that the plaintiffs had not met their evidentiary burden with respect to the district attorney's office, and the conclusion that the district attorney's office was not an entity for purposes of § 1983 liability was "arguably dicta" and not explained).

9

administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Id.* (alterations in original) (quoting *Odd*, 538 F.3d at 208). Therefore, when analyzing claims of prosecutorial immunity, courts must first identify the "conduct [that] forms the basis for the plaintiff's cause of action," and then "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). To prevail at the motion to dismiss stage, the prosecutor must demonstrate that "the conduct triggering absolute immunity 'clearly appear[s] on the face of the complaint." *Weimer*, 972 F.3d at 187 (quoting *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020)).

Here, Shelton appears to take issue with Krasner's involvement in establishing the criteria used at the beginning of the pandemic by the district attorney's office and public defender's office to determine who they would recommend for emergency release. ECF No. 1, at ¶ 14. In assessing whether such conduct is protected by absolute immunity, the Supreme Court's decision in *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009), is instructive.

There, the Supreme Court considered whether absolute immunity extended to claims that the district attorney failed to properly train or supervise prosecutors on disclosing impeachment material and failed to establish an information system containing potential impeachment material. 555 U.S. 335, 338 (2009). Although the Supreme Court characterized the challenged conduct as "administrative obligations," it ultimately concluded that absolute immunity still applied. The rationale was that the obligations "directly connected with the conduct of a trial." *Id.* at 443.[12] Explaining how it reached this conclusion, the Supreme Court pointed out that the trial prosecutors and their supervisors were clearly immune for their direct actions in the

---

[12] *See also Van de Kamp*, 555 U.S. at 344 ("[T]he types of activities on which [plaintiff's] claims focus necessarily require legal knowledge and the exercise of related discretion, *e.g.*, in determining what information should be included in the training or the supervision or the information-system management.")

underlying criminal case, given the close association with the judicial process. *Id.* at 345. Logically, then, it followed that the district attorney's development and application of the general supervision and training policies must also be afforded immunity. *Id.* at 346. The general polices, while administrative, "concern how and when to make impeachment information available at a trial" and therefore are "directly connected with the prosecutor's basic trial advocacy duties." *Id.*

The conduct challenged in this case is similarly the development and implementation of a general policy and thus administrative in nature. But the takeaway from *Van de Kamp* is that there are different kinds of administrative obligations. *See Schneyder*, 653 F.3d at 334. "[S]ome administrative functions relate directly to the conduct of a criminal trial and are thus protected, while others ('concerning, for example, workplace hiring, payroll administration, the maintenance of physical facilities, and the like,') are connected to trial only distantly (if at all) and are therefore not subject to immunity." *Id.* (citations omitted) (quoting *Van de Kamp*, 555 U.S. at 344). Here, Krasner is alleged to have developed a general policy to determine which pretrial detainees would be recommend for emergency release. *See* ECF No. 1, at ¶ 14. That is directly related to the conduct of criminal trials, specifically pretrial bail proceedings. *Cf. Sheffer v. Centre Cnty.*, 818 F. App'x 160, 162 (3d Cir. 2020) (affirming the conclusion that the assistant district attorney's "participation in [the plaintiff's] pre-trial arraignment and bail proceedings fall within the scope of her prosecutorial duties"). Therefore, he is protected by absolute prosecutorial immunity, and the claim against him in his individual capacity will be dismissed with prejudice.

### C. Defendant Blanche Carney

Shelton also brings individual and official capacity claims against the Commissioner of the Philadelphia Department of Prisons, Blanche Carney. *See* ECF No. 1, at ¶ 6. Like the official

capacity claim against Krasner, the official capacity claim against Carney must be dismissed because it is redundant to the claims against the City of Philadelphia. *Yoast*, 437 F. Supp. 3d at 419 n.15.

As to the individual capacity claims, Carney argues that the complaint lacks any allegation of her personal involvement, and therefore they must be dismissed. ECF No. 12, at 5–6. "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (alteration in original) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 2008)). In the supervisory context, there are two general methods of establishing personal involvement for purposes of § 1983 liability. *See, e.g., Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). The first method is if the supervisors "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The second method is if the supervisor "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720,725 (3d Cir. 1989)).

None of the allegations in the complaint state a claim under the first method. The complaint is devoid of any allegations that Carney participated in violating Shelton's rights, directed others to do so, or had knowledge of and acquiesced in a subordinates' violations. That leaves the second method of supervisory liability. The only policy that Shelton identifies that Carney participated in developing was the "criteria" that would be used to assess which pretrial

detainees would be recommended for emergency release due to the pandemic. *See* ECF No. 1, at ¶ 5. But as discussed previously, Shelton has failed to plausibly state an equal protection violation.

And even when construing the remaining allegations in the complaint related to Shelton's pretrial detainment liberally, they also do not plausibly state a claim for supervisory liability against Carney. As discussed above, Shelton's allegations related to religious diets and ceremonies do not adequately state a constitutional violation. Nor does he even suggest that Carney established or maintained such policies or practices with deliberate indifference. For the same reasons, his complaints about other conditions of his confinement (e.g., inadequate wages, substandard medical treatment, food lacking in nutrients, and the cost of phone calls and commissary items) fail. Accordingly, the individually capacity claims against Carney will be dismissed without prejudice, but Shelton will be granted the opportunity to file an amended complaint if he is able to cure the deficiencies identified by the Court.

### D.  Defendant Keir Bradford Grey

The final defendant in this case is former Chief Public Defender Keir Bradford Grey. ECF No. 1, at ¶ 4. Grey has neither responded to the complaint nor entered an appearance in this case. Nevertheless, the Court finds it prudent to address the claims against Grey *sua sponte* and dismiss them. *See, e.g.*, *Auriemma v. Bloomfield Municipal Court*, 841 F. App'x 499, 500 (3d Cir. 2021).[13] Section 1983 claims can only be maintained against persons acting under the color

---

[13] "Generally a court may sua sponte dismiss a complaint under Rule 12(b)(6), but only after service of process." *Auriemma*, 841 F. App'x at 500 (citing to *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 n.15 (3d Cir. 2002)). There are questions, here, as to whether Grey was properly served the summons and complaint. *See* ECF Nos. 15, 16 (indicating that the U.S. Marshals served summons and complaint by email on Attorney Richard Harris who apparently accepted the service). But even if service was not proper, Shelton was permitted to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), and therefore his complaint "is subject to dismissal 'at any time' if the district court determines that it 'fails to state a claim on which relief may be granted.'" *Auriemma*, 841 F. App'x at 500 (quoting 28 U.S.C. § 1915(e)(2)(B)(ii)).

of state law. *Williams v. Toomey*, 808 F. App'x 66, 68 (3d Cir. 2020) (citing to *West v. Atkins*, 487 U.S. 42, 48 (1988)). "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). The only allegations from the complaint that could be associated with Grey are related to the emergency release policy. ECF No. 1, at ¶ 14. For the same reasons that Krasner was found to be acting as a prosecutor with respect to that policy, the Court similarly finds that Grey was performing the traditional functions of counsel. Therefore, the claims against Grey must be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the motions to dismiss will be granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge